UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CAROL A. HOBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:13-cv-54 |
| | ) |
| TRANS UNION, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

In this Fair Credit Reporting Act case, brought under 15 U.S.C. § 1681, *et seq.* ("FCRA"), Defendant Trans Union, LLC, filed a motion to disqualify Plaintiff's counsel, G. John Cento and Cento Lane, LLC (collectively, "Cento"), based upon a purported conflict of interest given Cento's prior representation of Trans Union in other such cases.[1] (Docket # 14.) Cento, on the other hand, wants leave to conduct discovery (Docket # 18) and requests an evidentiary hearing (Docket # 19), contending that written discovery and depositions are necessary before he can respond to the motion to disqualify and the issue will ultimately require a multi-day evidentiary hearing. On June 3, 2013, the Court heard argument on Plaintiff's motions. (Docket # 33.)

For the following reasons, Plaintiff's request for discovery and an evidentiary hearing will be DENIED.

---

[1] Trans Union also filed a motion to stay all proceedings pending the Court's ruling on the motion to disqualify. (Docket # 16.)

### A. *Factual and Procedural Background*

Plaintiff filed this case against Trans Union, a consumer reporting agency, on February 27, 2013, after she was denied a credit card application based on allegedly inaccurate information reported by Trans Union on her credit report, including a Chapter 7 bankruptcy. (Docket # 1.) In her complaint, Plaintiff alleges that Trans Union violated the FCRA when it, among other things, distributed a consumer report that mixed her credit information with that of a person who had filed for bankruptcy, then refused to resolve the issue, and failed to follow reasonable procedures to ensure an accurate report. (Docket # 1.) A scheduling conference was set for May 30, 2013. (Docket # 7.)

On April 4, 2013, however, Trans Union filed a motion to disqualify Cento based upon an alleged conflict of interest. (Docket # 14.) Specifically, Trans Union contends that Cento served as its outside litigation counsel for more than five years and in that capacity spent in excess of 4,200 hours on 250 FCRA cases similar to this one, gaining access to its confidential information directly related to the issues in this case. Trans Union supports its motion with two affidavits—one from Attorney Robert Schuckit of Schuckit & Associates, Trans Union's outside counsel and Cento's former employer, and the other from Denise Norgle, Trans Union's general counsel. (Docket # 15.)

Two weeks later, Plaintiff filed the instant motion for leave to conduct discovery, asserting that Trans Union misrepresents the scope of Cento's prior representation, the confidentiality of the information at issue, and his knowledge about that information and contending that discovery is necessary to properly respond to the motion to disqualify. (Docket # 18.) More particularly, Plaintiff wants to discover details about *all* the cases in which Cento

represented Trans Union, his access to allegedly confidential information and whether such material is actually publicly known, and information regarding his termination from Schuckit & Associates.  Plaintiff seeks to discover this information through written discovery and by deposing Patricia Norris, Trans Union's former inhouse counsel.

In addition, Plaintiff requests that the Court hold an evidentiary hearing on the motion to disqualify so that Cento can cross examine Trans Union's witnesses and present rebuttal evidence regarding the matters raised by Trans Union. (Docket # 19.)  Plaintiff contends that the evidentiary hearing will reveal the "true reason" for Trans Union's motion—that it is "nothing more than harassment guided . . . by Cento's former aggrieved employer [Schuckit & Associates]." (Docket # 19.)

### B.  Legal Framework

Rule 1.9(a) of the Indiana Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Comment 2 explains that the scope of the "matter" for purposes of Rule 1.9 "depends on the facts of a particular situation."  In turn, Comment 3 states that matters are "substantially related" "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."

The Seventh Circuit Court of Appeals has adopted the "substantial relationship" test, recognizing that it "embodies the substance of Canons 4 and 9 of the A.B.A. Code of Professional Responsibility." *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 224 (7th Cir. 1978).

"Canon 4 provides that 'a lawyer should preserve the confidences and secrets of a client,' and Canon 9 provides that 'a lawyer should avoid even the appearance of professional impropriety.'" *Id*. The Seventh Circuit elaborated:

> [I]t is clear that the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other. The effect of the Canons is necessarily to restrict the inquiry to the possibility of disclosure; it is not appropriate for the court to inquire into whether actual confidences were disclosed.

*Id*.; *see also Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (explaining that matters are "substantially related" if the "lawyer could have obtained confidential information in the first representation that would have been relevant in the second").

### C.  Discussion

At oral argument, Cento admitted that he defended Trans Union's FCRA cases from 2001 to July 2005 when employed by Katz & Korin, P.C., and Schuckit & Associates and that he did so almost exclusively during the last three years of that period. (*See also* Schuckit Aff. ¶¶ 2, 3.)  He argues, however, that while on its face this "looks bad," Trans Union misrepresents the scope of his former representation and his access to its alleged confidential information and that the motion to disqualify was orchestrated by Schuckit solely to harass him after his unfriendly departure from that firm.  Cento urges that discovery is necessary for him to properly rebut Trans Union's representations.

Specifically, Cento seeks to discover the factual details of all 250 or so FCRA cases in which he represented Trans Union and the number of hours he spent on each matter, explaining

4

that he does not have these details in his possession.  He emphasizes that Rule 1.9 of the Indiana Rules of Professional Conduct requires a fact-specific inquiry into each of these past cases, no matter how cumbersome, to determine the scope of each matter and his degree of involvement in each case. IND. RULE OF PROFESSIONAL CONDUCT 1.9 cmt. 2.  He maintains, after all, that his involvement in some of these cases was not extensive.  Overall then, Cento claims that FCRA cases are unique creatures in the realm of litigation, and he wants an opportunity to show that the instant case is factually distinct from all the other FCRA cases that he defended for Trans Union.

There is no real dispute that Cento's prior representation of Trans Union involved discrete cases advanced under the FCRA, each driven by its own particular facts. *See generally Childress v. Trans Union, LLC*, No. 1:12-cv-184, 2012 WL 6728339, at *4 (S.D. Ind. Dec. 28, 2012).  But indulging in discovery of the discrete factual underpinnings of each of these prior FCRA cases is overly burdensome, unnecessary, and may inappropriately involve the disclosure of confidential information. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 132 (2000) ("The substantial-relationship test avoids requiring disclosure of confidential information by focusing upon the general features of the matters involved . . . .").

Indeed, such an approach obscures the forest for the trees; what is relevant to the motion to disqualify is that when representing Trans Union, Cento defended the *same* policies and procedures that he attacks here; that he did so on almost full-time basis for over five years; and that in doing so he likely gained insight into, among other things, Trans Union's litigation and settlement strategies, dispute resolution approaches, and risk evaluation and case management techniques. (Schuckit Aff. ¶¶ 16-19); *see, e.g.*, *Battagliola v. Nat'l Life Ins. Co.*, No. 03 Civ. 8558 GBD AJP, 2005 WL 101353, at *12 (S.D.N.Y. Jan. 19, 2005).  Although Cento stated at oral

argument that he cannot recall the factual details about each case, the Court is not persuaded that he needs to discover the particular facts about each of his prior FCRA cases in order to defend against the motion to disqualify.  Trans Union in its supporting affidavits describes the general duties that Cento performed during his representation and certainly Cento has personal knowledge sufficient to dispute whether he routinely performed such duties, which purportedly included negotiating settlements, developing legal strategy, preparing and defending witnesses in depositions, supervising other attorneys handling Trans Union cases, and contributing to Trans Union's policies and procedures. (*See* Schuckit Aff. ¶¶ 19, 20.)

In addition, Cento also seeks information concerning his past access to Trans Union's alleged confidential information and the "nature" of that confidential information, but this misses the point.  As explained earlier, the substantial-relationship test "involves a realistic appraisal of the *possibility* that confidences had been disclosed in the one matter which will be harmful to the client in the other" and "it is not appropriate for the court to inquire into whether actual confidences were disclosed." *Westinghouse*, 588 F.2d at 224 (emphasis added) ("The evidence need only establish the scope of the legal representation and not the actual receipt of the allegedly relevant confidential information."); *see also Analytica*, 708 F.2d at 1266.

In that same vein, Cento stated during oral argument that he wants to depose Ms. Norris to show that the information he received when defending Trans Union was not actually confidential, but rather, is commonly known among FCRA practitioners.  Again, Cento is free to argue in his response brief that certain information is publicly available and file his own affidavit in support, but to reiterate, the determination of a substantial relationship turns on "the *possibility* of disclosure," not whether actual confidences were disclosed. *Westinghouse*, 588 F.2d at 224

6

(emphasis added).

Finally, Cento wants to discover information regarding his termination from Schuckit & Associates to fuel his theory that Trans Union filed the motion—presumably in collaboration with Schuckit—solely for purposes of harassment.  But the question is whether the instant matter is "substantially-related" to Cento's prior representation of Trans Union.  Thus, the particular circumstances of Cento's termination from Schuckit (which spawned a lawsuit of its own) and Trans Union's ultimate motivation for filing the motion to disqualify, are irrelevant.

In sum, Cento has failed to show why he cannot present facts in opposition to Trans Union's motion to disqualify.  The information he seeks appears to be within his own knowledge or is irrelevant, and therefore Plaintiff's motion for leave to conduct discovery will be DENIED.  *See Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207 (S.D. Ind. 1995) ("[J]udges are given wide discretion to supervise the discovery process . . . ." (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985))).  The Court has also considered Plaintiff's request for an evidentiary hearing, but at this point an evidentiary hearing is unnecessary.  *See* N.D. IND. L.R. 7-5(c)(1) (stating that the court may "grant or deny a request for oral argument or an evidentiary hearing in its discretion").

## D. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Leave to Conduct Discovery (Docket # 18) and Request for Evidentiary Hearing (Docket # 19) are DENIED.  Plaintiff is afforded up to and including June 26, 2013, to file a response to Defendant's Motion to Disqualify (Docket # 14).  In addition, Defendant's Motion to Stay All Proceedings (Docket # 16) is GRANTED and

this matter is STAYED until the Court rules on Defendant's Motion to Disqualify.

SO ORDERED.

Dated this 5th day of June, 2013.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
