UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CAROL A. HOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:13-CV-54 |
| | ) | |
| TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the Court is Plaintiff Carol A. Hobson's Motion to Compel (Docket # 77), seeking supplemented and complete responses to her first Request for Production Nos. 2, 4-9, 12, 13, 16, 18-21, 27, and 29; her second Request for Production No. 1; and Interrogatory Nos. 2-10, 12, and 13. In response, Defendant Trans Union, LLC, argues that the motion is premature, that the disputed discovery is irrelevant or otherwise improper, and that its discovery production was sufficient. Because Trans Union's arguments are without merit, and Hobson's discovery requests are permissible and properly limited, her motion will be granted.

*A. Factual and Procedural Background*

Hobson filed this case against Trans Union, a credit reporting agency, on February 27, 2013, after being denied on a credit card application due to allegedly inaccurate information reported by Trans Union in her credit report. (Docket # 1.) Hobson alleges that Trans Union violated the Fair Credit Reporting Act ("FCRA") by erroneously "mixing" Carol Powers's (another consumer) negative credit information (i.e., delinquent credit cards and a Chapter 7 bankruptcy) with her credit report. Subsequently, Hobson says that Trans Union failed to conduct a proper reinvestigation of the allegedly inaccurate information contained in her credit

report. Hobson also alleges that Trans Union failed to maintain reasonable procedures to prevent her credit information from being mixed with that of another consumer.

On June 5, 2013, the Court stayed the proceedings while a motion to disqualify Hobson's initial counsel was pending. (Docket # 34.) After granting that motion (Docket # 63), the Court lifted the stay on November 27, 2013 (Docket # 67).

With new counsel, Hobson served Trans Union with her first Request for Production and set of Interrogatories on December 16, 2013; a second Request for Production was issued four days later. After allowing Trans Union additional time to respond, Hobson received Trans Union's initial discovery production on March 13, 2014. According to Hobson, these initial discovery responses were woefully inadequate; Trans Union turned over a mere 196 pages of documents and objected to the majority of her requests in their entirety. Likewise, in response to the Interrogatories, Trans Union provided almost no substantive answer, instead setting forth "a litany of generic, boilerplate objections." (Pl.'s Mem. in Supp. of Mot. to Compel ("Pl.'s Mem.") 3.)

Dissatisfied with Trans Union's initial production, Hobson's counsel sent a letter to Trans Union's counsel identifying her concerns. As a result of the letter, counsel for the parties held a telephone conference, and Trans Union indicated it would supplement its production responses and consider supplementing its Interrogatory Answers.

On April 28, 2014, Trans Union supplemented its discovery responses with sixteen pages of documents; four pages pertaining to Hobson's file, and a heavily-redacted twelve page document on mixed files. Trans Union did not supplement its Interrogatory Answers.

Frustrated by Trans Union's lack of production, Hobson filed the instant motion. The

2

disputed discovery requests can be broken into five general categories: (1) Trans Union's policies, procedures, data, and analyses on collecting and compiling credit information, mixed files, reinvestigations of consumer disputes, and personnel training; (2) information on Hobson; (3) information on Carol Powers; (4) Trans Union's expected defenses in this case; and (5) its related litigation for the previous five years.

In response, Trans Union argues that the motion was premature; that Hobson failed to show that Trans Union's objections were not justified; that its discovery production is satisfactory and Hobson's disputed requests are irrelevant, vague, and burdensome; and that turning over Powers's credit information would violate the FCRA.

### B.  Standard on a Motion to Compel Discovery

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id*.

### C.  Analysis

#### 1. Hobson Conferred In Good Faith to Resolve the Matter Without Court Intervention

As a preliminary matter, the parties dispute whether the instant motion is premature.

3

Trans Union argues that Hobson filed this motion after minimal attempts to resolve the dispute without court intervention and despite its invitation "to more specifically identify additional discovery, if any, that [she] may seek." (Dft.'s Resp. 5.)  Hobson argues that although she only sent a single letter to opposing counsel, and only had one phone call regarding discovery, further communication would be futile as Trans Union's unwillingness to produce additional discovery is evidenced by its lack of production and statements concerning its view on the scope of the case. (Pl.'s Mem. 5-6.)

Local Rule 37-1 requires the party filing a discovery motion to certify that it has "conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." *See also* Fed. R. Civ. P. 37(a)(1).  Hobson concedes that this Court has repeatedly advised parties that limited correspondences do not satisfy Local Rule 37-1.  *See, e.g.*, *Thomson v. City of Fort Wayne,* No. 1:12-CV-183, 2013 WL 2898275, at *1 (N.D. Ind. June 12, 2013) ("But a single e-mail sent to counsel, and that counsel's response, falls utterly short of a good faith attempt at a conference."); *Imbody v. C & R Plating Corp.*, No. 1:08-CV-218, 2010 WL 3184392, at *1 (N.D. Ind. Aug. 10, 2010) ("The few letters exchanged between counsel, however, hardly amount to a good faith attempt at a conference.") (citing two additional cases for same proposition).

Given the record as a whole, however, it is apparent that Hobson did all the Court requires; that is, she made a good faith effort to resolve the discovery dispute before bringing it to the attention of the Court.

Moreover, the parties are in agreement that Trans Union would potentially violate the FCRA were it to turn over Powers's credit report.  Hobson, however, points out that 15 U.S.C. §

1681b(a)(1) allows a Court to issue an Order authorizing Trans Union to furnish such a report. Because Court action is necessary to resolve the dispute in any event, and because it is apparent that further efforts at resolving the disputes would have been futile, the Court will proceed to address the motion. *See Cottle v. Falcon Holdings Mgmt., LLC*, 892 F. Supp. 2d 1053, 1060-61 (N.D. Ind. 2012) (deciding motion for sanctions on the merits although the limited interactions between parties "did not comply with the spirit" of Local Rule 37-1).

### 2. Hobson's Discovery Requests Concerning Trans Union's Credit Information, Mixed Files, Reinvestigation Claims, and Training Are Discoverable

Turning to the merits, the majority of this dispute concerns Trans Union's production of discovery relating to its procedures, policies, data, and reports on how it handles credit information, consumer report requests, mixed files, reinvestigation, and how it trains certain personnel. Specifically, first Request for Production Nos. 5 and 6 and Interrogatory No. 5 seek discovery on how information is added to a particular credit file and how information is retrieved from a credit file in response to a consumer report request. First Request for Production Nos. 7, 8, 18, 27, 29 and Interrogatories Nos. 4, 6, 7, 8, 9, 10, and 12 seek responses concerning how mixed files occur; how Trans Union identifies, handles, corrects, and prevents mixed files; and any studies, reports, records, or audits Trans Union has compiled or relied on concerning mixed files. First Request for Production Nos. 13, 16, 19, 20, and 21 seek documents on how Trans Union handles reinvestigation claims, trains employees to comply with the FCRA, and the associated costs and expenditures of dealing with reinvestigations of disputed credit information. First Request for Production No. 12 seeks documents utilized by Trans Union's Consumer Relations Centers.

In response to these discovery requests, Trans Union provided a single, twelve-page,

5

heavily redacted manual on mixed files. Trans Union's position, in essence, is that this is a mixed file case, and therefore, this manual–in addition to the 196 pages initially produced (which apparently consist almost entirely of Hobson's credit file)–is satisfactory. Other than this minimal discovery production, Trans Union's responses consisted of an exhaustive and repetitive list of boilerplate objections to each discovery request.

To illustrate, Interrogatory No. 4 asked Trans Union whether it delineates or designates different types of mixed files for any reason. (Docket # 78-4.) In response, Trans Union first incorporated by reference its General Objections and Objections to Definitions and Instructions; both of which set forth a host of boilerplate objections (e.g., "they are vague, confusing, overly broad, render the Interrogatories unduly burdensome, and seek information which is not relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence"). The Answer then stated:

> Trans Union further objects to this Interrogatory on the grounds that the terms "types," "kinds," "Mixed File," "record keeping," "reinvestigations," "corrections," "prevention," "mixing," "manuals" and "guides" are vague and ambiguous. Trans Union also objects to this Interrogatory on the grounds that . . . the time frame of January 1, 2003 to the present, as stated in Plaintiff's Definitions and Instructions are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Further, Trans Union objects to this Interrogatory to the extent it seeks confidential, proprietary and/or trade secret information. Trans Union also objects to this Interrogatory on the grounds that it is more properly the subject of a deposition where specific questions may be posed and specific answers given.

(Docket # 78-4.) Aside from a few additional objections tailored to each discovery request, this was Trans Union's approach throughout its responses.

In its response brief, Trans Unions reasserts the validity of these objections and argues further that Hobson's motion should be denied because she "has not and cannot meet her burden

to demonstrate that Trans Union's objections . . . are not justified." (Dft.'s Resp. 5-6.)

Trans Union's assertion that the party moving to compel discovery must show an objection is not justified is without applicable legal support. In this district (and likely throughout the Seventh Circuit), it is clear that "when dealing with a discovery objection . . . the burden 'rests upon *the objecting party* to show why a particular discovery response is improper." *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 527 (N.D. Ind. 2009) (emphasis in original) (quoting *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008)); *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006).

Moreover, courts in this Circuit have repeatedly admonished the objecting litigant that this "burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Medical Assur. Co. v. Weinberger*, 295 F.R.D. 176, 182 (N.D. Ind. 2013) (quoting *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009)); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006); *see Swift v. First USA*, No. 98-8238, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999).

Yet, despite these repeated admonitions, this is precisely what Trans Union has done here. As evidenced above, Trans Union's objections lack particularity, and instead it relies on redundant boilerplate verbiage. Accordingly, Trans Union's boilerplate objections are waived. *Kelley v. Bd. of Educ. of City of Chicago*, No. 10 C 7875, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) ("The defendant's *ipse dixit* recitation of boilerplate objections is thereby waived because such responses are improper."); *United Auto Ins. v. Veluchamy*, No. 09 C 5487, 2010

7

WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (waiving objections because boilerplate responses are improper); *see Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (finding that boilerplate objections are "tantamount to not making any objection at all") (citation omitted).

Furthermore, Trans Union's assertion that it has produced all relevant business records and documents concerning mixed files is both incorrect and insufficient. As indicated above, "[f]or discovery purposes, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 669-70 (N.D. Ind. 2008) (internal quotation omitted) (alteration in original). Here, Hobson has alleged that Trans Union violated the FCRA when it mixed her file with Powers, failed to conduct a proper reinvestigation, and failed to maintain reasonable policies and procedures. Unsurprisingly, Hobson seeks discovery on these very issues, and surely is entitled to do so. Moreover, because repeated FCRA violations by a consumer reporting agency is an important factor in determining liability, Trans Union's data, reports, and analyses on these issues is also discoverable. *See Dixon-Rollins v. Trans Union, LLC*, No. 09-0646, 2010 WL 3749454, at *10 (E.D. Pa. Sept. 23, 2010) ("Thus, because Trans Union has continued to disregard its obligations despite clear judicial rulings and warnings, its conduct is more reprehensible than that of a first time offender, requiring more severe punishment.").

Accordingly, Hobson's motion will be granted with respect to first Request for Production Nos. 5-8, 12, 13, 16, 18-21, 27, and 29, and Interrogatory Nos. 4-10, and 12.

### 3. Trans Union Must Supplement Its Responses to Discovery Requests Concerning Hobson

Hobson's Interrogatory No. 3 and Second Request for Production No. 1 seek information

regarding the records Trans Union maintains on her.  Specifically, Interrogatory No. 3 asks whether Trans Union considered Hobson to have a mixed file, and depending on that answer, poses a series of follow-up questions.  Trans Union's Answer, however, recites the same boilerplate objections and thus they are waived for the reasons already stated.  *See Veluchamy*, 2010 WL 749980, at *5; *see also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994,* 172 F.R.D. 295 (N.D. Ill. 1997) (rejecting generic, non-specific, boilerplate objections).  Accordingly, Hobson's motion to compel an answer to Interrogatory No. 3 will be granted.

Hobson's second Request for Production No. 1 seeks the "[a]udio recording of any and all communications between Plaintiff and Trans Union."  (Docket # 78-6.)  Skipping over the now wholly rejected objections, Trans Union did say "that it does not have within its possession, custody, or control any audio recordings . . . of any telephonic communications between Plaintiff and Consumer Relations personnel at Trans Union, regarding any dispute by Plaintiff, within the two year period preceding the filing of Plaintiff's Complaint."  (Docket # 78-6.)

Hobson contends that during their Local Rule 37-1 conference, Trans Union was asked to remove the qualifications and simply answer whether any audio recordings exist, but they refused to do so.  The refusal is curious, but presumably stems from Trans Union's contention that it "has answered the question as clearly as it can, and is entitled to qualify the response with its understanding of what Plaintiff seeks with this Request."  (Dft.'s Resp. 14.)

Unfortunately, however, Trans Union has not answered the "question as clearly as it can" given the qualifications and limitations it attached to its response.  For instance, Trans Union fails to say whether it has audio recordings of communications between Hobson and non-Consumer Relations personnel or whether it has such recordings from a time period outside "the

9

two year period preceding the filing of Plaintiff's Complaint." (Docket # 78-6.) "Evasive or incomplete answers" such as Trans Union's are "properly remedied by an order compelling discovery." *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt.*, 271 F.R.D. 487, 499 (N.D. Ind. 2010). Accordingly, Hobson's motion to compel second Request for Production No. 1 will be granted.

In the event it turns out that Trans Union has no such audio recordings in its possession, custody, or control, it is ordered to file an affidavit, "(1) stating that after diligent search there are no responsive [recordings] in [its] possession, custody, or control . . . , and (2) describing [its] efforts to locate [recordings] responsive to" Hobson's second Request for Production No. 1. *Martin v. Fort Wayne Police Dept.*, No. 1:09-CV-74, 2009 WL 3345769, at *1 (N.D. Ind. Oct. 15, 2009).

### *4. The Basis For Trans Union's Anticipated Defenses Are Discoverable*

Next, Interrogatory No. 2 asks Trans Union to provide its anticipated defenses and the corresponding identity of the expected witnesses and documents. In response, Trans Union first offers its usual objections, which are waived for the reasons already stated.[1] Trans Union then points to its Answer and Initial Disclosures, which it argues are sufficient at this preliminary stage.

Turning to these two documents, Trans Union's Answer lists fourteen conclusory affirmative defenses (Docket # 10), and its Initial Disclosure simply asserts that it may use its

---

[1] Although Hobson attached Trans Union's answers to the first set of interrogatories, pages two and four of this document are missing, the latter of which contains Trans Union's Answer to Interrogatory 2. (Docket # 78-4.) As such, the Court was forced to rely on the parties' respective briefs to determine Trans Union's answer to this interrogatory. Because the parties' representations of Trans Union's answer to this interrogatory are nearly identical, Hobson does not need to resubmit the exhibit. In the future, however, Hobson should ensure that all pages of submitted documents are included in filings with the Court.

records on Hobson to support its defenses.  (Docket # 78-10.)

Trans Union's reliance on and incorporation of its Answer and Initial Disclosures are wholly non-revealing.  For instance, while one of Trans Union's affirmative defenses alleges that it "has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff," there are no corresponding documents or individuals identified in its Initial Disclosures.  Surely there must be some documents upon which Trans Union relies that outline or establish these so-called "reasonable procedures," yet they remain mum.

Simply put, it is unfair to allow Trans Union to allege that an affirmative defense exists, but then fail to respond to a discovery request seeking documentation and witnesses testing that defense.  *See Veluchamy*, 2010 WL 749980, at *5 n.5 (granting motion to compel seeking production of documents in support of allegations of affirmative defenses and noting that there is an "obvious unfairness of allowing answers and counterclaims to stand while simultaneously objecting to discovery regarding those defenses . . . ."); *Davis v. City of Springfield, IL*, Nos. 04-3168, 07-3096, 2009 WL 268893, at *7 (C.D. Ill. Jan. 30, 2009) (compelling Defendant to respond to an interrogatory requesting identification of facts, witnesses, and documents in support of affirmative defenses).  Accordingly, Hobson's motion to compel an Answer to Interrogatory No. 2 will be granted.

### *5. Discovery Requests Pertaining to Carol Powers Are Discoverable*

Hobson's first Request for Production Nos. 2, 4, and 9 seek Trans Union's documents regarding Powers.  Hobson argues that such information provides insight into how the files were mixed, whether any of her information was entered into Powers's file, and whether Trans Union

11

has corrected the mixed files.  (Pl.'s Mem. 17.)

In response, Trans Union lists the same old objections–which, again, are waived–and also objects because disclosure of a third party's personal and financial information would violate the FCRA.  (Dft.'s Resp. 10.)

Trans Union's position, however, is overstated as 15 U.S.C. § 1681b(a)(1) provides that, "any consumer reporting agency may furnish a consumer report . . . [i]n response to the order of a court having jurisdiction to issue such an order."  Clearly, Powers's file, as it is maintained by Trans Union, is relevant and can be furnished under the terms of the Protective Order already in place.  Trans Union does not contend otherwise.

Further, Trans Union fails to identify a single case in which a court has declined entering such an Order.  In fact, other district courts have found that such an order is appropriate. *See Koster v. Trans Union, LLC*, No. 4:12CV00074, 2012 WL 5471884, at *2 (E.D. Mo. Nov. 9, 2012) (granting motion to compel unrepresented third parties credit report and interactions with Trans Union); *Calderon v. Experian Info. Solutions, Inc.*, No. 1:11-cv-386, 2012 WL 2449853, at *1-2 (D. Idaho June 18, 2012) (granting motion to compel credit file of unrepresented third party where third party had agreed to waive any objections he might have to the disclosure); *see also Pappas v. City of Calumet City*, 9 F. Supp. 2d 943, 948-49 (N.D. Ill. 1998) (holding that police officers could have requested a court order authorizing credit reporting agency to release plaintiff's credit report).  Accordingly, Hobson's motion will be granted with respect to first Request for Production Nos. 2, 4, and 9.

In the event Trans Union has not maintained the disputed discovery information, it must, once again, file an affidavit stating that there are no responsive documents in its possession,

12

custody, or control, and describe its efforts to locate them. *Martin*, 2009 WL 3345769, at *1.

### 6. Trans Union's Involvement in Previous Mixed File Litigation Is Discoverable

Finally, Interrogatory No. 13 requests the name, case number, and court for all of Trans Union's FCRA lawsuits involving a mixed file claim over the past five years.

Trans Union argues that this Interrogatory is improper for seemingly contradictory reasons. Initially, it argues that because the Interrogatory "seeks publicly available information to which Plaintiff has equal access" she should do the search herself. This argument, however, is immediately followed by the misplaced assertion that answering the Interrogatory will reveal "confidential information relating to third parties and information which contains attorney-client privileged communications." (Dft.'s Resp. 11.) Simply stated, nothing in Interrogatory No. 13 can be construed as soliciting confidential or privileged information, so that contention is rejected.

Trans Union's other argument is equally meritless as it has the obligation "to prove the extent of [its] burden," and it simply has not done so here. *United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, No. 06 C 6131, 2014 WL 222727, at *2 (N.D. Ill. Jan. 21, 2014). More to the point, Hobson observes that a PACER search reveals more than 5,000 cases against Trans Union, and while there "is no meaningful way" for her to determine which of these cases are mixed file cases, Trans Union can presumably do so. (Pl.'s Reply 9.) Trans Union offers nothing to combat the suggestion that it can easily provide the information Hobson seeks, and certainly makes no record concerning the burden such a search would impose.

Moreover, district courts routinely allow discovery of a party's previous related litigation, particularly where the scope is as limited as it is here (only the preceding five years of

13

mixed file cases).  *See Ahern v. Trans Union LLC Zale Corp.*, No. 301CV02313, 2002 WL 32114492, at *2 (D. Conn. Oct. 23, 2002) (compelling "copies of all judgments, court opinions and orders, complaints, consent orders, and non-confidential settlement agreements involving [Trans Union] and identity theft matters that are of *public record*" for the preceding five years) (emphasis in original); *Koster*, 2012 WL 5471884, at *2 (compelling answer to number of mixed file lawsuits Trans Union has defended in the preceding five years); *see also Donnelly v. NCO Fin. Sys. Inc.*, 263 F.R.D. 500, 505 (N.D. Ill. 2009) (compelling production of information relating to other lawsuits or legal proceedings in which defendant was charged with violating the law at issue).  Accordingly, Hobson's motion to compel with respect to Interrogatory No. 13 will be granted.

### D.  Conclusion

For the reasons stated herein, Hobson's Motion to Compel (Docket # 77), addressing first Request for Production Nos. 2, 4-9, 12, 13, 16, 18-21, 27, and 29; second Request for Production No. 1; and Interrogatory Nos. 2-10, 12, and 13 is GRANTED.[2]  Trans Union is ORDERED to fully and completely answer Hobson's Interrogatories and respond to her first and second Request for Production by June 19, 2014.

SO ORDERED.

Enter for this 6th day of June 2014.

/s/ Roger B. Cosbey  
Roger B. Cosbey  
United States Magistrate Judge

---

[2] Hobson withdrew her motion to compel a response to her first Request for Production No. 30.

14